Good morning, everyone. Good morning. Good morning. Good morning. It's wonderful to see you all. And we hope that everyone is doing well. All right. Thank you. Judge Kirsch and Judge Ripple. Our first case of the day is appeal number 21-2946, 21-2954, and it's Joseph C. Sheehan v. Breccia Unlimited Company. Mr. Welch? Good morning, Your Honors, and my name is David Welch. I represent the appellants. And if I may, may it please the Court. There are several issues in the briefing in the appeal, but I think the ultimate threshold issue is the one of personal jurisdiction. So unless, Your Honors, direct me on that. Forgive me, but it just is a preliminary matter. Could you describe for us what Mr. Sheehan's interest was in the BlackRock shares in the bankruptcy proceeding was filed, given the outcome of the litigation in Ireland? Would we call it a beneficial interest, a contingent interest, or something else? What would it be? Sure, Your Honor. As a bankruptcy lawyer, I would probably put it in the context of bankruptcy law, that is, Dr. Sheehan had an undisputed direct property interest in both the BlackRock shares and the Bailey Height property. There were foreclosures pending. There were actions by the secured creditor to foreclose on their liens, take possession of those two assets as collateral for loans that had been acquired several years earlier in the Chapter 15 case in Delaware. But make no mistake about it, as of the filing of the Chapter 11 case, the debtor was the owner of the BlackRock shares, the debtor was the owner of the Bailey Height property, and those two assets comprise property of the debtor's estate under the meaning of Section 541. But the Irish proceedings were over, were they not? Well, if Your Honor includes in the proceedings just the legal aspect of it, I'm not sure that any court proceedings were remaining. However, there were the receiverships that were remaining, which were basically outsourced. Were those receiverships, were they by virtue of a court order? This word receiver, as it was used in Ireland, was puzzling in reading the briefs. It seemed to me that these individuals were not receivers of court-appointed receivers. They were agents of the private party at that time. They were agents of the private party who was authorized to proceed based upon legal proceedings within Ireland. And your view is the bankruptcy stay extends to that situation? Undoubtedly, Your Honor. I think, and maybe that's not even in dispute here. One of the briefs that I think does put it in dispute. I don't think it's the, I don't think what's in dispute is the worldwide effect of the automatic stay. I think the, what's in dispute is whether or not there is jurisdiction over the individual so that we can enforce that automatic stay back here. Well, that certainly is in dispute, but it seemed to me it was also in dispute as to whether or not the bankruptcy stay, to begin with, extended this far. No, I recall it differently, Your Honor, but make no mistake. Well, I'll let you please see. I know you have an argument to make with respect to jurisdiction. Have I answered Judge Robner's question? I hope so. I do too. Thank you. So, I think where I think a critical issue begins is what is the importance of the intervening bankruptcy in the determination of whether or not there's specific personal jurisdiction over the defendants in the underlying adversary proceeding in the bankruptcy court? And contrary to some of the arguments that are made by the appellees, it is not the appellant's argument that the mere fact of the bankruptcy creates the ability to assert specific personal jurisdiction over the individuals. It's what happens after that case is filed, and I think that's the important thing. What happened here, Your Honors, is the case was filed and a state was created under Chapter 11, under Section 541 of the Bankruptcy Code, which is comprised of all interests and property of Dr. Sheehan, wherever located in the world. Those interests could be as simple as having direct title to the BlackRock shares in the Ballyhag property. It could be residual interests. Mr. Walsh, let me ask you a question about that. Once the bankruptcy state is created, you would agree that the property is then fictionally in Illinois? Absolutely, Your Honor. But I think the case law makes clear that when we do that, when we treat property as fictionally located in Illinois, we treat it as a person. The property becomes treatable as a person. And of course, you can't have jurisdiction, you can't have personal jurisdiction by just having contacts with a person in the state. So you've got this fictional world where the property is treated with a person. If the property is treated with a person and the defendant's only contacts are with this fictional person in the state, how does that confer personal jurisdiction? Your Honor, I see it differently. I see the Simon case as saying that the property is legally situated within the jurisdiction of the bankruptcy court where the case is pending. Fictionally, though, right? Fictionally, but for purposes of establishing personal jurisdiction, I think what we then look to is what happens next. In our particular case, when the bankruptcy case was filed, we immediately sent a series of notices to the appellees advising them of the filing of the cases, the existence of the automatic stay, the rights of the debtor and property of the estate, and asked them to stand down. And up to that point, the filing of the case and the delivery of those notices, there's no personal jurisdiction. We're just not there yet. There's no minimum contact yet. It's what happens next that's important. And what happens next is what the appellees did. What the appellees did is they actually, with actual notice, continued with the foreclosure, the sale, the disposition of the Bailey Hyde property and the Black Rock shares, knowing that the bankruptcy stay was in place. I would say to Your Honors, they really had several choices here. They had the choice that they made, but they also had two other choices. First choice they could have done is they could have stood down entirely, and they could have avoided any contacts with the United States, and could have waited for the bankruptcy to run its course, wait for the automatic stay to be dissolved by operation of law when the bankruptcy case concluded, and then proceed to do whatever they want to do with respect to their collateral, making it the burden upon the debtor to do something. Or they could have come to the bankruptcy court and sought to lift the stay. They could have come to seek to lift the stay, so they could proceed. As a practical matter, was that a real choice for you? Which one, Your Honor? The one where they stand down? You gave us two choices. As a legal matter, yes. As a practical matter, did they have a choice? I'll do the easy one first, Your Honor. The easy one first is the motion for relief from stay. I would suggest to Your Honor that every bankruptcy court in every state, in every district in this country probably hears more motions for relief from the stay than they hear with respect to anything else. So is it practical? Not only is it practical, it's what most people would do when they were faced with the notices that they received from us. So I think that's the easy one. The second one, standing down, you know, their claims may be dealt with. If they stood down, their claims may be dealt with in an ultimate plan of reorganization, but their liens would always stand, and they would always be able to enforce their liens. And I have been involved in cases where that, in effect, is exactly what the secured creditor does. It relies on the strength of its pre-petition liens to enforce them when the bankruptcy case is over if they don't want to be here. It is a real choice. And all of those choices are three real choices that these employees made, and there are consequences for the one that they did make. And our argument is that the consequence for saying, you know what, we have notice of the bankruptcy, and we're going to continue to foreclose and sell the assets despite the automatic stay and despite the property being legally situated here in the United States, those are enough contacts to create the minimum contacts to create personal jurisdiction. But based on that argument, go ahead, Judge Rovner, go ahead. No, no, please. Okay. Based on that argument, though, the Debtor's Unilateral Act of filing for bankruptcy in the jurisdiction creates personal jurisdiction over the defendant. The reason I say that is because the defendant's only option is to do nothing. If the defendant does anything at all, the bankruptcy court then has personal jurisdiction over the defendant under that theory, or the defendant purposely avails itself to the courts in Illinois, in which case, of course, the court has personal jurisdiction over the defendant. So by that argument, a plaintiff, all a plaintiff or a debtor would have to do is file for bankruptcy in the United States, and a bankruptcy court in the United States would have jurisdiction over any foreign creditors, personal jurisdiction, not just in-rem jurisdiction, if the creditor did anything at all. Your Honor, I respectfully disagree. What could the creditor have done with respect to this property to not subject itself to personal jurisdiction in the United States? The other two options that I suggest, Your Honor, could have stood down and waited for the bankruptcy to run its course, and then enforce its liens later when there no longer was an automatic stay, or it could have come to the court and sought relief from the stay so it could proceed. You can't seek relief from the stay without subjecting yourself to personal jurisdiction of the court, right? I understand, Your Honor, but if the goal of the creditor is to avoid the jurisdiction of the court and avoid the effect of the bankruptcy laws of this country, which enables somebody to use their property to pay all of their creditors as opposed to one creditor getting it all, it's a decision they could make, and it's not the filing of the bankruptcy case creates the time for the creditor to make that decision. It doesn't create the personal jurisdiction. The personal jurisdiction is created based upon the creditor's decision about what to do with being presented with a bankruptcy case. I think that's the question, right? I mean, that's the question that doesn't seem to be totally clear law on that point, at least from what I've seen in the briefs. And that's, I would say to Your Honor, that clear law from the standpoint of whether or not there's a case within this circuit that has dealt with these kinds of facts, I think the answer is no. I think we're... Well, wait, hold on a minute, please. Forgive me. But how is this case different from our mobile anesthesiologist case? Yes, Dr. Sheehan gave the defendants notice that if they took action, it would be in violation of the automatic stay, and to that extent, would have consequences in Illinois. But why would that be enough to establish personal jurisdiction here when it wasn't sufficient in our mobile anesthesiologist case? Your Honor, I would suggest that the context that we're suggesting occurred are stronger than the context that we're in the case Your Honor is referencing. I would also cite that these are contexts that are directly aimed at this debtor, at this estate, at this property, and at this court. And I think that's a little bit different. That's how you feel you fulfill the Calder... Yes, sir. ...test, is that right? Yes, sir. In other words, there was a res in the United States and that these Irish individuals directly injured that res. Correct, Your Honor. Correct. So where I think we're at here is, I think Your Honor obviously know, we've cited three cases that are not binding on this court that are elsewhere. I think it's Florida, Missouri, and New York that I think are the cases that are the best evidence of what that could be analogized to our facts. I think our facts are stronger. I think our facts are better for establishing the minimum context than in the Likes, Childs, and Probold cases. How are they stronger? What are your contacts, other than the fact that Dr. Sheehan is here? The contacts, Your Honor, are the fact that the Bailey Hyde property and the BlackRock shares, under the Simon case, are legally situated here in the jurisdiction of this bankruptcy court. Therefore, it's property of the estate and anything that they have done to realize on those assets constitutes a contact. The things they have done are selling, taking possession, evicting, and things of that sort. I would also add, Your Honor, while it's not the only thing, and it certainly would be with respect to the bankruptcy and what they were doing, what they were seeking from him, his cooperation, his participation, so they've dealt with him at that level as well. But make no mistake about it, our key argument is that the property, by virtue of the filing of the Chapter 11 case, became legally situated here, and any responsive actions by the appellees with respect to that property constitute a contact here in this jurisdiction. Unless Your Honor's had anything further, I would yield to the other side. Thank you very much. Is that Mr. Hicks? Yes, Your Honor. Okay. And Mr. Bem will be having five minutes, is that correct? That's correct, Your Honor. I have 10. Yes, thank you. Thank you, Your Honor. And may it please the Court, George Hicks for Appellees Breccia Unlimited Company and Irish Agricultural Development Company Unlimited. And I'm going to start you off also, please forgive me, but because in view of the litigation in Ireland, how would you describe in concrete terms, please, Dr. Sheehan's interest in the two assets at issue here? As of the date the bankruptcy proceeding was filed, does he stand to recover any portion of the sale price to IADC, for example, to the extent the proceeds exceed his indebtedness on the loan? Yeah. Your Honor, our position is that Dr. Sheehan does not have any ownership title whatsoever in these properties. That was exactly what the parties litigated over for five years in the Irish courts was the rights of the defendants to be able to enforce their security interests and to be able to foreclose on those properties. And so Dr. Sheehan filed his Chapter 11 petition on March 12, 2020, which was conveniently very right after all of this happened, where he lost the litigation after five years. And the Breccia, my client, had already registered the shares in its name and had appointed the Murren party to sell those shares. So we have already kind of gone past the point of Dr. Sheehan having any claim to ownership. But to be very clear, we can assume for purposes of this personal jurisdiction argument here today that he had some sort of right to them. Was the property still part of the bankrupt estate? Did the stay apply to that property? Your Honor, at least assuming that taking everything Dr. Sheehan has said in his adversary complaint, the property would be part of the in-rem jurisdiction of the bankruptcy court. However, that is extremely different from the in person. Are you conceding that point? If you assume that he had ownership to that. So you're asking us to decide a hypothetical jurisdictional issue? Well, no, Your Honor. I'm not. For purposes of this appeal, it is alleged in his adversary complaint that he owns that property. And so, therefore, it is part of, we will say, we will concede that it is part of the in-rem jurisdiction of the bankruptcy court. But that is very different from the ability of that court to exercise specific personal jurisdiction over the defendants here. How do you deal with Calder and all of the cases after Calder? The Supreme Court's doing something with what a plaintiff has to do, rather, a defendant has to do in a jurisdiction in order to be amenable to personal jurisdiction. What's your take? Your Honor, I would look to the Supreme Court's case in Walden versus Fiore. In this court's case in the city of Hobart, all of these have talked about the supposed effects-based approach to specific personal jurisdiction and effectively said that there really isn't that much of that left to the personal jurisdiction test. I mean, in Walden, the Supreme Court specifically explained and, frankly, cabined Calder v. Jones to that specific libel-based tort and talked about the defendant's very purposeful directive actions into the forum state, which we simply don't have here. So you don't think Walden is fact-specific in any way? Walden v. Fiore, I don't think it is. I think Walden was very clear about what the plaintiff has to show. And it's not the defendant's contacts, incidental contacts with the plaintiff. And it's not, Judge Kirsch, you're exactly right. It's not the unilateral act of the plaintiff that can establish specific personal jurisdiction over the defendant. It has to be the defendant's contacts with the forum state itself. The plaintiff cannot be the only link. Certainly the damage which your clients allegedly did to the res was significantly more direct than the damage that this security officer in Atlanta did to these plaintiffs out in Arizona, right? Well, Your Honor, I simply don't think that that sort of effects-based approach to specific personal jurisdiction really has any currency after Walden. What you have to look at is the defendant's suit-related conduct must create a substantial connection. Suppose a construction company doing construction in a municipality along a state line does a construction in a municipality along a state line, are they subject to jurisdiction in that second state where the damage occurred? Your Honor, I don't know if they would be under this court's cases and Walden. I don't know because- That would upset a great deal of common law in this country, wouldn't it? I mean, that's been pretty much established for an awful long time. Well, I think you would have to look at the defendant's purposeful availment into that jurisdiction. Now, I would think that in that particular- My problem is I don't know exactly what kind of legs Walden has. I know there's a lot of poetry in the opinion dicta, but when push comes to shove, what are we supposed to do when there's a clear palpable effect in a second jurisdiction? Even though the plaintiff never enters it, he simply acts in a way that clearly has an effect in another jurisdiction, damage effect. Your Honor, I would look at Walden and I would look at City of Hobart, and I think the law is very clear now that it can't simply be incidental effects that happen to be, as in this case- The question is incidental. I'm sorry, Your Honor. The question is incidental. I think it's absolutely incidental when it's caused by, as Judge Kirsch noted, the unilateral filing of a Chapter 11 petition. It would create jurisdiction anywhere. The whole case goes now to the circuit. Your whole case then really is whether this is direct damage or incidental damage. Is that right? Your Honor, I disagree. I think that for the reasons we laid out in our brief, there is simply no establishment of specific personal jurisdiction here. Whether you look at the minimum contacts analysis or whether you look at the additional requirement that Dr. Sheehan doesn't even address in his opening brief, and he thereby forfeiting it, but even on the merits, the reasonableness requirement. I mean, there's a whole specific personal jurisdiction test that has to be established. So you look at Walden as creating a sea change in personal jurisdiction jurisprudence in the United States. I do not, Your Honor. I look at it, though, as cabining what Calder v. Jones said about the effects test, and I think that that has been established in the Rogers v. City of Hobart case and subsequent cases by this Court. And I want to point out that Dr. Sheehan, both in his briefing and here today, has really kind of been all over the place in exactly what is the theory for specific personal jurisdiction. I mean, on the one hand, he on occasion points to some scattered contacts about sending letters, about the effects. But then on the other hand, really, his whole reply brief and most of the argument here today was directed toward this idea that once you've got a bankruptcy case in Chapter 11, that the property that is actually located in another jurisdiction here overseas somehow becomes located in the jurisdiction. And so therefore, anything that acts upon it subjects that person to personal jurisdiction. Judge Kirsch, you're exactly right. That would create specific personal jurisdiction, not even general, but specific personal jurisdiction in basically any bankruptcy filing anywhere. And that is completely contrary to Walden, to City of Hobart, which said that it cannot be the unilateral act of the plaintiff. So here, if Dr. Sheehan had filed in the Northern District of Indiana, there would be specific personal jurisdiction in the Northern District of Indiana under his theory, or any other jurisdiction. And that is simply not the law of specific personal jurisdiction. Frankly, that's kind of turning it into a general personal jurisdiction inquiry. And the Supreme Court and this Court have been very clear that there is a clear distinction between those two. And Dr. Sheehan doesn't argue for that. And I even heard here today that even after the sort of legally located theory, which again, is really the theory that they're pinning this on. It's not the effects, and it's not these random contacts. They've pretty much abandoned that theory in their reply brief. It's this legally located. But then there was another shift to, well, actually, it wasn't even the filing of the Chapter 11 petition. It was things that occurred after that. It's when we put them on notice. But that has nothing to do with specific personal jurisdiction. Judge Rovner, you're correct that that just runs right into the mobile anesthesiologist case and many other cases saying that contact by the plaintiff to the defendant is not enough to establish specific personal jurisdiction. And again, this is all aside from the fact that Dr. Sheehan never even argued in this opening brief. And there's really no meritorious basis for saying that the exercise of specific personal jurisdiction here would be reasonable and comport with fair play and substantial justice, particularly considering the foreign overlay of this proceeding, which courts, including the Supreme Court, have held militates strongly against specific personal jurisdiction. Thank you very much. So, Mr. Ben, let's see. Good morning. Jason Ben. I may please the court. Jason Ben on behalf of Damien Murren in his capacity as receiver of the Black Rock Shares and the Ballyhock property and also on behalf of RSM Ireland Business Advisory Limited. I want to begin by addressing the Calder question. I think one of the distinctions that we should take in mind is that that was a case that pursued. He was performing a lawful duty within Ireland. I think when we ask some of these questions, we have to realize that Dr. Sheehan is asking this court to decide certain things that really can only be decided by Ireland lawyers, Irish judges. So there was litigations for five years, and it had concluded. I think that was the first question. And what was left for Dr. Sheehan was more or less, at most, and we do have to consult an Irish solicitor, was an equitable right of redemption. He really didn't have anything left to be property of the estate, but as a bankruptcy lawyer, I'm not going to say that Section 541 would not have brought the equitable right of redemption into the state, and he certainly could have exercised his right to redeem the property in Ireland. Dr. Sheehan is a familiar Irish litigant, even though he's been called a facious and three different jurisdictions, the United Kingdom, the United States, and here, but he's familiar with the Irish proceedings. He just ran out of time, ran out of options, so he performed this unilateral act, filed bankruptcy, and created this effects-based, I guess this fictional theory of where the property is located, as opposed to where it's actually located. So far, the discussion has only been about personal jurisdiction, but we have to remember there's four grounds in which the bankruptcy court ruled in favor of our clients, and also to Mr. Hicks' clients. So any one of those grounds can affirm this decision, especially to form nonconvenience, and we got to recall that that standard is an abuse of discretion that no reasonable person can say that Judge Cox made the wrong decision in this case, and in that case, she relied on TECNEC, which is a decision that Dr. Sheehan is relying on, a decision that she authored, and she followed that decision, where she reached a different result, and not only, not with respect to both personal jurisdiction and form nonconvenience, in this case, she looked at the effects, the contacts that they're alleging, and said there's no jurisdiction here, and the reason it is, and Counselor Bertia alluded to it, there's a difference between in-rim jurisdiction over the property, and in-personum jurisdiction over the people, over the persons in this case, the defendants in the case. We can debate whether Walden is a shift in the law, or if Calder is a law, but I think the real issue is what were the contacts at play here, and we're talking about lawful acts that was sanctioned by an Irish court, it's more, it's like the officer in Indiana, in the Hobart case, Rogers versus City of Hobart, he was just performing his duties as an officer, that's what my client was doing. Since he was appointed by a contract by Bertia, he performed lawful acts, and they may have effects on, I guess, whatever residual right that Dr. Sheehan had in this bankruptcy that he filed, in our opinion, for the sole purposes of interfering with a lawful foreclosure proceeding in Ireland, where this court really, it just doesn't have jurisdiction over any of the parties. When Judge Cox decided to form non-convenience, she looked at several of the private factors, several of the public factors, basically, how are you going to compel witnesses? What would be the cost of bringing the witnesses over? How can you enforce it? And one of her, in making a decision on both personal jurisdiction and form non-convenience, she made the, she cited case law and saying, without personal jurisdiction, we cannot enforce the stay. The bankruptcy court needs the assistance of an Irish court to enforce the automatic stay. An affidavit was submitted by O'Grady, by Brescia's counsel, where he, now, of course, is self-serving, but he laid out Irish law, he cited to a case called Flight Lease over there, I mean, we're here trying to interpret what's going on in Ireland. And he said, if you follow that case, there's no way an Irish court is going to enforce that automatic stay over real property, the Ballyhive property in Ireland, or against the stock that's also registered and located in Ireland. So there's really no basis for this court to exercise personal jurisdiction, or at least attempt to exercise personal jurisdiction, because it won't be enforceable in Ireland under Irish law. The other two grounds, really, the court also said there was no proper service here. That hasn't been addressed by any of the parties. At first, Brescia, IADC, Mr. Murray, and RCM Ireland, they received service by email, or an attempt at waiver of service. As this court knows, that's not proper under Hague Convention. That five minutes goes fast. It does. It does. But does, do either Judge Kirsch or Judge Ripple have any other questions? I'm fine. Thank you. None for me. Thank you. Thank you, Your Honor. Thank you, Mr. Ben. All right. We're going to bring Mr. Welsh back up. And he had requested four minutes, and we'll give it to him. Thank you again, Your Honors. And four minutes will even go quicker than five minutes. So the first thing I want to point out is that we have never argued that in-rem jurisdiction is the same as personal jurisdiction. What we have argued is what in-rem jurisdiction is within the context of the bankruptcy case. But we fully have acknowledged that establishing personal jurisdiction is an entirely separate obligation and duty that we would have in order to proceed. But the problem is, once you file, there does seem to be some gamesmanship here. Because in this sense, a debtor or someone could file for bankruptcy and then create personal jurisdiction. Now, you say, no, that doesn't happen. But the creditor, wherever located in the world, has to stop whatever they're doing. That's their only option. They could submit themselves to personal jurisdiction in the United States. Or they could stop whatever actions they're engaged in in their foreign countries under their foreign laws. Otherwise, according to your theory, they've submitted themselves to the jurisdiction of the United States. So they really have no choice, which gets back to the question is, why is that not the plane of unilaterally creating personal jurisdiction? Your Honor, maybe the best way to look at it is forget for a moment, just for a moment, that we're dealing with a debtor in Chicago and defendants in Ireland. And just say they're here. When a debtor files a bankruptcy case, there is an automatic stay. That's what the statute provides. And any creditor must stand down. Now, that's clearly much more able to be enforced if that creditor is located within the bounds of this country. But the case law is clear that the automatic stay has worldwide effect so long as you can also get personal jurisdiction over that foreign defendant and enforce the automatic stay in this case. So up to that point, it's no different, Your Honor. What then happens, because you have a foreign creditor, is what do they do? And that's what we're focused on here. And the notion that this is some novel theory or something that we just raised on appeal, it's not the case. If you look at all of our briefs at every level, we argued the Simon case, we argued it, and we quoted from it. We quoted from it more in the Seventh Circuit. But the bottom line is that up to the point of the filing of the case and the imposition of the automatic stay, it's no different anywhere in the world. It becomes different for personal jurisdiction reasons when it's a foreign defendant when we look at what they do. But the difference would be, let's take a case within the United States. If an Illinois plaintiff filed a lawsuit against a California defendant to prevent the California defendant from doing something in California. And the California defendant had no contacts with the state of Illinois at all, none. The Illinois court had no personal jurisdiction over the defendant. The defendant could do whatever it wanted in California. The Illinois court could not prevent that if it didn't have personal jurisdiction over the Illinois defendant. That is correct. But it's different in the bankruptcy context, right? That's your argument. It's different in the bankruptcy context because the Ireland defendant or the Ireland creditor can do nothing. Because once the Ireland creditor does anything at all that affects the property that's now subject to in-rem jurisdiction in the United States, they've subjected themselves to personal jurisdiction in the United States. The intervening bankruptcy creates, let's call them additional or different circumstances for both that California defendant and the Irish defendant. But that's my problem. That's a dangerous place to go in my view because that's the plaintiff unilaterally creating personal jurisdiction. So we'd have to decide that personal jurisdiction is different in the bankruptcy context than it is in any other type of litigation or domestic litigation, I think, to accept that there's personal jurisdiction. I would say, and I see my time is up, but I would say the intervening bankruptcy is another circumstance to be considered. It may open up the door to additional types of minimum contacts. But it's the same analysis no matter how you cut it. It's the same analysis. It's just another factor that has to be considered because of the intervening bankruptcy. And unless your honors have any additional questions, I appreciate the opportunity to be here and thank you very much. Thank you. Thank you very much. And the case will be taken under advisement.